**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

CARL D.,

                Plaintiff,

      v.                                                8:18-CV-1106
                                                        (DJS)

COMM'R OF SOC. SEC.,

                Defendant.
_____

**APPEARANCES:**                                             **OF COUNSEL:**

CONBOY, MCKAY, BACHMAN & KENDALL, LLP    LAWRENCE D. HASSELER,
Counsel for Plaintiff                                          ESQ.
407 Sherman Street
Watertown, NY 13601

U.S. SOCIAL SECURITY ADMIN.                  DANIEL STICE TARABELLI,
OFFICE OF REG'L GEN. COUNSEL – REGION II   ESQ.
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

**DANIEL J. STEWART
United States Magistrate Judge**

# DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Carl D. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 7 & 11. For the reasons set forth below, Plaintiff's Motion is granted and Defendant's Motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1964, making him 50 years old at the alleged onset date and 53 at the ALJ's decision. Tr. at p. 85.[1] Plaintiff reported completing the twelfth grade, attending special education classes throughout school, receiving a certificate related to a learning disability, and attending vocational training for welding. Tr. at pp. 60 & 62. He has past work as a laborer classified as construction worker I by the vocational expert. Tr. at pp. 78 & 96. At the initial determination level, Plaintiff alleged disability due to a neck impairment, depression, bipolar, and numbness in the arms and legs. Tr. at p. 85.

### B. Procedural History

Plaintiff applied for a period of disability and Disability Insurance Benefits on June 9, 2015, and for Supplemental Security Income on June 10, 2015, alleging disability beginning March 27, 2015. Plaintiff's applications were initially denied on November 5, 2015, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Shawn Bozarth on September 14, 2017. Tr. at pp. 53-82. On October 24, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 7-26. On July 31, 2018, the Appeals Council denied Plaintiff's request for review. Tr. at pp. 1-6.

---

[1] The Administrative Transcript is found at Dkt. No. 6. Citations to the Administrative Transcript will be referenced as "Tr." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

**C. The ALJ's Decision**

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. Tr. at pp. 12-21. First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2020. Tr. at p. 12. Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 27, 2015, the alleged onset date. *Id.* Third, the ALJ found that Plaintiff's lumbar degenerative disc disease is a severe impairment. *Id*. Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at p. 14. Specifically, the ALJ considered the criteria of Listing 1.04 (impairments of the spine). *Id*. Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except

> [he] could occasionally climb stairs and ramps, stoop, kneel, crouch, crawl, and balance. He could never climb ladders, ropes, and scaffolds. [He] could never be exposed to unprotected heights or moving machine parts. [He] should not be exposed to vibrations or temperature extremes. He could occasionally reach bilaterally, but would otherwise be able to frequently finger, feel, and handle.

Tr. at pp. 14-15. Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. at p. 20. Seventh, and last, the ALJ found that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. Tr. at pp. 20-21. The ALJ therefore concluded that Plaintiff is not disabled. Tr. at p. 21.

**D. The Parties' Briefings on Their Cross-Motions**

*1. Plaintiff's Motion for Judgment on the Pleadings*

Generally, Plaintiff makes three arguments in support of his Motion for Judgment on the Pleadings. Dkt. No. 7, Pl.'s Mem. of Law at pp. 11-18. First, Plaintiff argues the ALJ failed

3

to properly consider his neck impairment and resulting limited range of motion. *Id*. at pp. 14-17. Plaintiff also argues his neck impairment should have been found severe and its resulting functional limitations should have been considered in determining his RFC. *Id*. Plaintiff maintains the ALJ gave only partial or little weight to all of the treating physician opinions, all of which indicate Plaintiff has a neck impairment that, at the very least, causes limited range of motion of the neck, and "more often that it is at least a contributing factor to all of the issues Plaintiff testified to at his hearing." *Id*. at p. 13. Plaintiff argues the ALJ's decision contains no reference to or evaluation of this impairment other than the evaluation of Plaintiff's credibility and subjective complaints of disabling symptoms. *Id*. at pp. 16-17.

Second, Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence. *Id*. at pp. 14-16. Specifically, Plaintiff argues that the ALJ only gave partial or little weight to the treating physician opinions without pointing to a treating or consultative practitioner that supported his RFC analysis. *Id*. Plaintiff also argues that, despite consultative examiner Elke Lorensen, M.D., opining moderate restrictions in turning the head, the ALJ failed to incorporate any limitations in turning the head into the RFC and that the ALJ "has pointedly gone through Plaintiff's voluminous Record and cherry-picked specific visits, notes, or facts that fit his desired outcome." *Id*. at pp. 16-18.

Third, Plaintiff argues the ALJ's Step Five determination is not supported by substantial evidence because none of the jobs identified by the vocational expert ("VE") are of significant numbers as required by the regulations. *Id*. at pp. 16-18.

4

*2. Defendant's Motion for Judgment on the Pleadings*

Generally, Defendant makes two arguments in support of his Motion for Judgment on the Pleadings. Dkt. No. 11, Def.'s Mem. of Law at pp. 3-10. First, Defendant argues that substantial evidence supports the RFC assessment and that the RFC finding properly accounted for Plaintiff's neck impairment. *Id*. at pp. 3-8. Specifically, Defendant maintains that there is no legal requirement that the ALJ rely on a medical opinion in every case to formulate the RFC and that the ALJ based the RFC finding on a medical opinion in giving partial weight to Dr. Lorensen's opinion, which constituted substantial evidence in support of the ALJ's RFC finding. *Id*. at pp. 3-4. Defendant maintains Dr. Lorensen's moderate restrictions were consistent with an RFC for light work. *Id*. at pp. 4-5. Defendant notes the ALJ also referenced other medical evidence supporting the RFC finding and argues that Plaintiff provides no examples of improper evaluation or cherry-picking of the evidence by the ALJ. *Id*. at pp. 5-6.

Regarding the ALJ's consideration of Plaintiff's neck impairment, Defendant contends the ALJ discussed Plaintiff's allegation that he became disabled due to neck issues, his testimony regarding neck pain, medical evidence related to Plaintiff's neck impairment, and Dr. Lorensen's finding that Plaintiff had moderate restrictions turning his head. *Id*. at pp. 6-7. Defendant points out that Plaintiff has not challenged any of the reasons cited by the ALJ justifying the omission of limitations in turning his head. *Id*. at pp. 7-8. Defendant also argues Dr. Lorensen's moderate restriction in turning the head (the only such limitation opined by a physician of record) is consistent with the ALJ's RFC for light work. *Id*. at p. 8.

5

Second, Defendant contends substantial evidence supports the ALJ's Step Five finding because the 8,554 positions identified by the VE is a significant number of jobs in the national economy that Plaintiff can perform. *Id*. at pp. 8-10.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides,

6

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the

7

claimant is unable to perform his past work, the [Commissioner]
then determines whether there is other work which the claimant
could perform. Under the cases previously discussed, the
claimant bears the burden of the proof as to the first four steps,
while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Substantial Evidence Does Not Support the ALJ's Analysis of Plaintiff's Neck Impairment and the Opinion Evidence

*1. Applicable Law*

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor v. Astrue*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of

8

presenting evidence to establish severity. *Id.* (citing *Miller v. Comm'r of Soc. Sec.*, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

The failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *report and recommendation adopted,* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1979)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the

9

RFC assessment.'" *Hendrickson v. Astrue*, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012), *report and recommendation adopted,* 2013 WL 1180864 (Mar. 20, 2013) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek v. Colvin*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *report and recommendation adopted,* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek v. Colvin*, 802 F.3d at 375 (quoting *Burgess v. Astrue*, 537 F.3d at 129).

*2. Relevant Opinion Evidence*

In September 2015, consultative examiner Dr. Lorensen noted Plaintiff had a normal gait and stance, but was unable to walk on his heels without difficulty. Tr. at p. 406. He had limited range of motion in the cervical spine, deep tendon reflexes were physiologic and equal in the upper and lower extremities, no sensory deficits were noted, and Plaintiff had full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally. Tr. at p. 407. Dr. Lorensen diagnosed neck pain, status-post cervical spine surgery, and hypertension and opined that there were no gross limitations to sitting, standing, walking, or handling small objects with the hands and moderate restrictions to bending, lifting, reaching, and turning the head. *Id*.

In August 2016, Monique Morneault, PA-C, indicated Plaintiff was first seen in June 2015 and clinical findings indicated cervical myelopathy unimproved or with minimal improvement following spine surgery in June 2015. Tr. at p. 546. In October 2016, treating physician Dr. Healey opined Plaintiff could occasionally and frequently lift and/or carry less than 10 pounds, stand and/or walk less than two hours in an eight-hour workday, sit less than six hours in an eight-hour workday, could occasionally kneel and stoop, and needed to periodically alternate sitting and standing to relieve pain or discomfort. Tr. at p. 547. He also indicated Plaintiff was limited in pushing and/or pulling with the upper and lower extremities and should never climb, balance, crouch, or crawl. *Id*. Plaintiff could never reach and could occasionally handle, finger, and feel. Tr. at p. 549. He was limited in his tolerance of temperature extremes, vibration, humidity/wetness, and hazards. Tr. at p. 550. Dr. Healey indicated that pain was present to such an extent as to be distracting to adequate performance

11

of daily activities or work, that physical activity such as walking, standing or bending greatly increased pain causing abandonment of tasks related to daily activities or work, and that medication would severely limit Plaintiff's effectiveness in the work place due to distraction, inattention, and drowsiness. Tr. at p. 551. Dr. Healey indicated these limitations were present since approximately December 2014. Tr. at p. 552.

In an October 2016 letter, Dr. Healey noted that he had treated Plaintiff for upper back and neck pain and that Plaintiff's prognosis was not good. Tr. at p. 553. It was his opinion that Plaintiff could not return to work at that time and Plaintiff had undergone neck surgery recently but had not done well; Dr. Healey doubted Plaintiff would ever return to work. *Id*.

In August 2017, Dr. Healey opined Plaintiff could occasionally lift and carry up to 10 pounds, sit for 15 minutes at a time for three hours total, stand for five minutes at a time for 45 minutes total, walk 5 minutes at a time for 45 minutes total, could never reach overhead, could occasionally reach in other directions, could occasionally handle/finger/feel, could never push or pull, could occasionally use the bilateral feet for the operation of foot controls, could occasionally climb stairs and ramps, could occasionally stoop, kneel, crouch and crawl, and could never climb ladders or scaffolds or balance. Tr. at pp. 598-600. He could occasionally tolerate moving mechanical parts and operating a motor vehicle, but could never tolerate unprotected heights, humidity and wetness, extreme cold/heat or vibrations. Tr. at pp. 601-02. Dr. Healey indicated these limitations had been present since October 2014. Tr. at p. 603.

### 3. *The Court's Analysis*

At Step Two, the ALJ found Plaintiff's lumbar degenerative disc disease is a severe impairment. Tr. at p. 12. In determining his RFC, the ALJ concluded Plaintiff could perform

a modified range of light work. Tr. at pp. 14-15. Plaintiff argues that the ALJ erred in failing to find Plaintiff's neck impairment is severe or properly consider the resulting functional limitations in determining his RFC; Plaintiff contends that the RFC determination is not supported by substantial evidence, in part because the ALJ failed to incorporate any limitations in turning the head despite the opinion of Dr. Lorensen. Pl.'s Mem. of Law at pp. 12-16. The Court finds these arguments persuasive for the following reasons.

First, the Court is not convinced that the ALJ properly considered Plaintiff's alleged neck impairment despite finding at least one other severe impairment and continuing the sequential evaluation. Tr. at pp. 12-21. Namely, the Court is troubled by the ALJ's failure to mention Plaintiff's alleged neck impairment at all at Step Two. Tr. at pp. 12-14. Specifically, the ALJ recounted that Plaintiff had alleged "post-concussion syndrome, migraine headaches, a mood disorder, adjustment disorder, and alcohol abuse[,]" but found these impairments to be non-medically determinable because there was "no evidence from an acceptable medical source establishing the existence of these conditions." Tr. at p. 13. Documentation from the initial determination on Plaintiff's claims showed he alleged a neck impairment in addition to depression, bipolar, and numbness in the arms and legs. Tr. at pp. 85 & 99. Plaintiff's testimony from the September 2017 administrative hearing included details about his neck problem with two previous surgeries. Tr. at pp. 62-67, 70, 73, & 75. Consultative examiner Dr. Lorensen diagnosed neck pain and status-post cervical spine surgery and opined limitations in turning the head. Tr. at p. 407. Yet, the ALJ's analysis at Step Two does not reflect explicit consideration of the evidence of record related to Plaintiff's alleged neck impairment and leaves the Court unsure whether the ALJ found this impairment to be non-severe or even non-medically

13

determinable. Tr. at pp. 12-14. Further, although the ALJ did consider Listing 1.04 (impairments of the spine), the ALJ did not otherwise mention a neck impairment when determining Plaintiff's severe and non-severe impairments or when considering the Listings. *Id.*

Second, although a failure to explicitly articulate a finding regarding the severity of Plaintiff's neck impairment at Step Two may be harmless because the ALJ did find at least one other impairment severe, continued the sequential evaluation, and discussed evidence related to Plaintiff's cervical spine impairment, the ALJ's limited analysis regarding this neck impairment leaves the Court unsure if he adequately considered the evidence and limitations related to this impairment at Step Two and the subsequent steps. *Fuimo v. Colvin*, 948 F. Supp. 2d at 269-70; *Reices-Colon v. Astrue*, 523 Fed. Appx. at 798. To be sure, the ALJ did mention Plaintiff's alleged neck impairment within his RFC analysis, referring to "neck issues" and noting Plaintiff's testimony regarding his neck pain and related symptoms, two neck surgeries, physical therapy and chiropractic treatment. Tr. at p. 15. The ALJ also noted other evidence related to Plaintiff's cervical spine impairment and Dr. Lorensen's examination, but the Court is again struck by the ALJ's lack of careful analysis specific to Plaintiff's alleged neck impairment and related limitations. *Compare* Tr. at pp. 15-19 *with* Tr. at pp. 338, 347, 273, 387, 293, 295, 300, 416, 428, 488, 500, 533, 562, 580, 594, & 606.

Notably, the ALJ indicated Plaintiff "exhibited no musculoskeletal tenderness, straight leg raise testing was negative, [his] range of motion was full, his reflexes were intact, his strength was full, he had a normal gait, and he appeared in no acute distress." Tr. at p. 16. The ALJ concluded "[t]hese consultative examination findings demonstrate no deficits in sitting,

14

standing, walking, lifting, or carrying, that would interfere with the ability to perform a range of light work." It appears the ALJ focused on Plaintiff's lumbar degenerative disc disease and failed to mention that Dr. Lorensen's examination noted limited range of motion in the cervical spine. Tr. at pp. 16 & 407. The ALJ also did not initially note that Dr. Lorensen opined moderate restrictions in reaching and turning the head. *Id*.

The ALJ did observe that Plaintiff was noted to have a plateau in improvement in August 2015, but indicated that imaging of the spine found good positioning of the software. Tr. at p. 16 & 399. The ALJ noted he considered Plaintiff's surgical history, but concluded "the evidence of record supports significant healing following these procedures." Tr. at pp. 17, 560, & 562. The ALJ also subsequently noted Dr. Lorensen's opined moderate restrictions in bending, lifting, reaching and turning the head (and no gross limitations in sitting, standing, walking, or handling small objects) and gave partial weight to this opinion, noting it provided a detailed supporting explanation, but that the evidence of record supported that Plaintiff is limited to a range of light work. Tr. at pp. 18 & 404-08. The ALJ indicated this evidence included findings that Plaintiff's gait was slowed and he had decreased range of motion as well as findings of a disc herniation at C4-C5, mild posterior disc osteophyte complex formation at C5-C6 and C6-C7, and bilateral facet hypertrophy at C4-C5 with only mild-to-moderate spurring. Tr. at pp. 18, 273, & 533. However, the ALJ's analysis of this and the other opinion evidence does not otherwise discuss the opined limitations related to turning the head or why they were not included in the RFC. Tr. at pp. 14-20.

Third, the ALJ consistently indicated that, post-cervical spine surgery, Plaintiff's wound was healing well and he had a relaxed gait in December 2015. Tr. at pp. 17-19 & 560. The

15

ALJ appears to have utilized this December 2015 progress note to at least partially discount the opinions from treating sources Gregory Healey, M.D., and chiropractor Angela Rufa, D.C., affording them only partial weight. *See* Tr. at pp. 17-19, 283-92, 545-54, & 598-604. However, the ALJ's analysis neglects to mention subsequent treatment notes and opinions from Dr. Healey and seemingly ignores Dr. Healey's indications that Plaintiff had clinical findings including cervical myelopathy unimproved following spine surgery and minimal improvement. *See* Tr. at pp. 17-19, 546, & 553. Indeed, in October 2016, neurosurgeon Paul Penar, M.D., could only conclude that cervical myelopathy was causing Plaintiff's residual spasms and sense of weakness which was not helped by a second operation for posterior decompression. Tr. at pp. 578-79 & 586. The ALJ's decision also does not include discussion of an October 2016 letter from Dr. Penar indicating a diagnosis of cervical myelopathy and noting Plaintiff continued to have spasticity and weakness as a primary limitation of function which might improve up to two years from the time of surgery with the initial operation being on June 22, 2015. Tr. at p. 586. Again, the Court is left unsure why the ALJ did not discuss this evidence in his decision or further explain his finding as to the severity of Plaintiff's alleged neck impairment. *See* Tr. at pp. 12-20.

"To be sure, '[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.'" *Coleman v. Comm'r of Soc. Sec.*, 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015), *report and recommendation adopted,* 2016 WL 109994 (Jan. 8, 2016) (quoting *LaRock ex. rel. M.K. v. Astrue*, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011)). However, as in *Coleman*, the ALJ's reasoning for choosing the particular December 2015 treatment

16

record, and not others, is not clear. *Id*. It is not apparent from the Court's review of the ALJ's decision and the evidence that the ALJ properly considered the entirety of the evidence related to Plaintiff's alleged neck impairment.

Further, the ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of his findings. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (quoting *Morgan on behalf of Morgan v. Chater*, 913 F. Supp. 184, 188-89 (W.D.N.Y. 1996)); *Booker v. Astrue*, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). The ALJ's analysis regarding Plaintiff's impairments is confusing at best and appears to ignore some of the evidence at worst. It fails to provide a logical bridge to support the ALJ's findings. Therefore, the Court finds that the ALJ's findings related to Plaintiff's impairments and RFC as well as the opinions from Dr. Lorensen and Dr. Healey are not supported by substantial evidence.

Finally, the Court's review finds similar confusion in the ALJ's analysis of Plaintiff's alleged mental impairments. Specifically, the ALJ found only lumbar degenerative disc disease to be a severe impairment and initially indicated that Plaintiff had alleged "post-concussion

17

syndrome, migraine headaches, a mood disorder, adjustment disorder, and alcohol abuse[,]" but found these impairments to be non-medically determinable because there was "no evidence from an acceptable medical source establishing the existence of these conditions." Tr. at pp. 12-13. The ALJ then stated that Plaintiff's "medically determinable mental impairments, considered singly and in combination, do not cause more than minimal limitation in [his] ability to perform mental work activities and are therefore nonsevere." *Id*. The ALJ also stated that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas, they are nonsevere." Tr. at p. 14. Despite considering Plaintiff's limitations in the four functional areas, the ALJ did not provide further clarification as to which mental impairments were found to be non-medically determinable or non-severe (the latter of which would have then needed to be considered by the ALJ at the subsequent steps in the sequential evaluation). Tr. at pp. 13-14.

For the reasons above, the Court finds that substantial evidence does not support the ALJ's findings regarding Plaintiff's impairments and RFC or his consideration of the opinion evidence. Remand is therefore required on these bases.

### *B. The ALJ's Step Five Determination*

Because remand is necessary to address the issues identified above, the Court declines to reach a specific finding on Plaintiff's argument that the ALJ's Step Five determination is not supported by substantial evidence because none of the jobs identified by the VE are of significant numbers. However, upon remand, the ALJ should consider the need to conduct a new Step Five determination in light of his consideration of Plaintiff's RFC.

18

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: October 25, 2019
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

19